# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## CASE NO. 3:23-cv-00539-BJD-PDB

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

CEDRIC DEWAYNE GRIFFIN,

     Defendant.

_____/

## AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "SEC") alleges:

## I. INTRODUCTION

1.     This case concerns a securities offering fraud and Ponzi scheme targeting the African American community in Jacksonville, Florida.

2.     At the center of this fraudulent scheme is defendant Cedric Dewayne Griffin ("Defendant" or "Griffin"), who lured individuals into investing in promissory notes issued by Defendant's companies G8 Equity LLC ("G8 Equity") and G8 RE Capital LLC ("G8 RE") (collectively, the "G8 Companies").

3.     From no later than January 2020 until at least December 2021 (the "Relevant Period"), Griffin raised at least $5,895,024 from 103 investors through

the sale of the G8 Companies' promissory notes, by telling a series of material misrepresentations.

4.     Griffin told potential investors he would use investor funds to purchase, rehabilitate, and resell real estate.

5.     This was false.  Griffin did not purchase any real estate.

6.     Instead, Griffin used investor funds to line his own pockets and to pay prior investors their purported investment returns in Ponzi-like fashion.

## II.    DEFENDANT AND RELATED ENTITIES

### A.    Defendant

7.     Griffin resides in Jacksonville, Florida. Griffin formed G8 Equity in 2016 and was its Manager since at least 2020 and its Chief Executive Officer from no later than April 2021 until at least February 2022.  Griffin formed G8 RE in April 2021 and was its President from no later than April 2021 until at least January 2022. From October 2016 until September 2022, Griffin was a licensed real estate broker in Florida. In March 2022, the Jacksonville State Attorney's Office charged Griffin with three counts of grand theft in connection with his real estate business, *State Of Florida v. Cedric Dewayne Griffin, 2022-CF-002535.*

### B.    Related Entities

8.     G8 RE is a Florida limited liability company Griffin formed in 2021 with its principal place of business in Jacksonville, Florida.  G8 RE purportedly

2

specialized in real estate investments. On January 21, 2022, G8 RE was placed into bankruptcy under Chapter 7 of the Bankruptcy Code, and since February 2022, G8 RE and its remaining assets have been controlled and administered by a Chapter 7 Trustee. G8 RE was administratively dissolved in September 2022. Neither G8 RE nor its securities have ever been registered with the Commission in any capacity.

9.      G8 Equity is a Florida limited liability company Griffin formed in 2016 with its principal place of business in Jacksonville, Florida. G8 Equity purportedly specialized in real estate investments. On May 27, 2022, the bankruptcy court in the G8 RE Chapter 7 case entered an order substantively consolidating the assets and liabilities of G8 Equity with G8 RE, to be administered by the Chapter 7 trustee. G8 Equity was administratively dissolved in September 2022. Neither G8 Equity nor its securities have ever been registered with the Commission in any capacity.

## III.   JURISDICTION AND VENUE

10.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); and Sections 21(d), 21(e), and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. This Court has personal jurisdiction over Griffin, and venue is proper in the Middle District of Florida, because many of Griffin's acts and transactions constituting

violations of the Securities Act and the Exchange Act occurred in Jacksonville, Florida, where Griffin resides.  During the time of the violations at issue in this case, Griffin's principal place of business was in Jacksonville, Florida, and the G8 Companies through which Griffin engaged in the violations were located in Jacksonville, Florida. Griffin operated the offering fraud at issue out of Jacksonville, Florida.

11.     In connection with the conduct alleged in this Amended Complaint, Griffin, directly and indirectly, singly or in concert with others, has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.  THE FRAUDULENT SCHEME

### A.  Griffin's Fraudulent Securities Offerings

12.     From no later than January 2020 through approximately December 2021, Griffin offered and sold securities of G8 Equity and G8 RE in the form of short-term promissory notes with a rollover option.

13.     From no later than January 2020 until December 2021, Griffin sold a total of at least 546 promissory notes to investors, at least 156 of which were issued by G8 Equity and at least 390 of which were issued by G8 RE (collectively, the "G8 Notes").

14.     Other than the issuer name, the G8 Notes were substantially the same.

15.     The G8 Notes were titled "Investment Note Payable Agreement" and generally ranged in duration from 24 to 30 days.

16.     The G8 Notes provided for interest rates of 10% to 33% per month, with the investors' principal returned at the conclusion of the 24 to 30 day period.

17.     The G8 Notes stated that the issuer, G8 Equity or G8 RE, would use the investor proceeds "in regards to real estate investment deals."

18.     Griffin signed the G8 Notes as the "Manager" of G8 Equity or G8 RE.

19.     From no later than January 2020 until at least December 2021, Griffin raised at least $5,895,024 from 103 investors through the offer and sale of the G8 Notes.

20.     From no later than January 2020 through approximately December 2021, Griffin solicited investors to invest in the G8 Entities' promissory notes.

21.     To locate potential investors, Griffin relied on word of mouth within the local Jacksonville, Florida community and his church, which church has the initials C.R.P.A.

22.     Griffin solicited prospective investors from at least seven states, including Georgia, North Carolina, New Jersey, New York, South Carolina, and Virginia, but the majority of investors were from Jacksonville, Florida and were African-American.

23.     Griffin routinely pitched the investment to investors in person at the G8 Entities' office located in Jacksonville, Florida.

24.     During these pitches at the G8 Entities' office, Griffin:

a.     Did not provide investors with any written information about the offering other than the promissory note;

b.     Represented to investors that he would use their money to purchase real estate properties at wholesale prices and sell them quickly for a profit;

c.     Touted his 20 years of experience buying and selling real estate as a licensed real estate broker, and claimed this experience enabled him to profitably resell real estate and thereby provide investors with high monthly returns; and

d.     Described the investment as a passive, short-term investment with investors' returns generated solely from Griffin's efforts.

25.     After entering into the G8 Notes, investors made their investment payments by check or wire transfer either to G8 RE's or G8 Equity's bank accounts.

26.     Assuming an investor chose not to rollover his or her investment for a new investment term, Griffin typically returned investors their principal and/or made interest payments by check or wire transfer.

27.     Griffin regularly communicated to investors about investment opportunities and the status of principal and interest payments by telephone, text messaging, and the "24ent" social media application.

1. *Investors V.B. and J.S.*

28.     For example, in October 2021, an investor who is a bank employee and resides in Jacksonville, Florida with initials V.B. met with Griffin in the G8 Entities' office in Jacksonville.

29.     V.B., who has no experience purchasing real estate and has little investment experience, wanted a safe and secure investment with no risk to her principal and was seeking to invest in a passive investment to provide investment returns.

30.     During the October 2021 meeting, Griffin described the investment as a passive, short-term investment where Griffin would generate investment returns using his real estate expertise and assured V.B. that because Griffin was a licensed real estate broker with 20 years of experience buying and selling real estate, he was able to make a profit reselling homes quickly.

31.     During this same meeting, Griffin told V.B. that she would receive approximately 10% interest in about 30 days with the option to reinvest her principal and earn additional interest after the 30 days.

32.     On about October 18, 2021, V.B. and her 18-year old son, with initials J.S. ("J.S."), jointly invested $13,000 in the G8 RE promissory note Griffin was selling.

33.     Griffin executed the note on behalf of G8 RE.

34.     The promissory note in which V.B. and J.S. invested was for a 28-day term, with $1,300 in interest to be paid on or before November 19, 2021 with the return of principal to V.B. and J.S.

35.     V.B. and J.S. renewed their investment in the G8 RE note twice.

36.     When the promissory note matured in November 2021, V.B. and J.S. renewed their principal investment and interest earned, totaling $14,300, to invest in a renewal promissory note for a 31-day term, with $1,430 in interest to be paid to V.B. and J.S. by G8 RE on or before December 22, 2021.

37.     On about December 28, 2021, V.B. and J.S. renewed their investment a second time, by investing their principal investment and interest earned, totaling $15,730, in a renewal promissory note for a 29-day term, with $1,573 in interest to be paid on or before January 25, 2022. After the second renewal of their investment in the G8 RE promissory note, despite repeated text messages, neither V.B. nor J.S. heard from Griffin and have not received their principal or any interest on their investment to this day.

38.     Griffin repeated this same solicitation method throughout the offering period.

*2. Investor D.E.*

39.     For example, in November 2020, Griffin met with a man who is a small business owner and has the initials D.E. ("D.E.") at the G8 Entities' office in Jacksonville, Florida.

40.     D.E. lacked expertise investing in private companies and flipping properties and was interested in a passive investment that would generate investment returns.

41.     During the November 2020 meeting, Griffin told D.E. that:

        a.     Based on Griffin's experience buying and selling real estate, Griffin was able to make a profit reselling homes quickly, and that was how Griffin could pay investors high monthly returns; and

        b.     The G8 investment was passive and short-term, where D.E. would receive approximately 25% interest in about 30 days, with the option to reinvest his principal and earned interest after the 30 days.

42.     After meeting with Griffin, D.E. invested in a G8 Equity promissory note.

43.     Specifically, on November 16, 2020, D.E. invested $20,000 in exchange for a G8 Equity note that was for a 32-day term, with $5,000 in interest to be paid on or before December 18, 2020.

44.     When the 32-day term ended, Griffin paid D.E. $5,000 in interest via check.

45.     In December 2020, D.E. renewed his investment in the November 16, 2020 note and invested $20,000 in a G8 Equity promissory note.

46.     D.E. renewed this investment in the November 2020 note 5 additional times, rolling over his investment into G8 Equity notes in January 2021, March 2021, April 2021, and into G8 RE notes in May 2021 and October 2021.

47.     On August 18, 2021, D.E. invested an additional $10,000 of principal in a second promissory note with G8 RE, that provided $1,500 in interest to be paid by G8 RE to D.E. on or before September 23, 2021.

48.     D.E. renewed this investment in the August 2021 note 2 additional times, rolling over his investment into G8 RE notes in September 2021 and November 2021.

49.     On about December 15, 2021, D.E. reinvested the principal and interest earned from the November 2020 promissory note and subsequent renewals, and the August 2021 promissory note and renewals.

50.     Specifically, on December 15, 2021, D.E. invested in two additional promissory notes with G8 RE for $30,417 and $15,208, respectively.

51.     The December 15, 2021 G8 RE note in which D.E. invested $30,417 provided that "[o]n or before January 11, 2022 Investor will be paid $4562 interest from G8, plus principal, in which can be re-invested if opportunity presents itself."

52.     The December 15, 2021 G8 RE note in which D.E. invested $15,208 provided that "[o]n or before January 11, 2022 Investor will be paid $2281 interest from G8, plus principal, in which can be re-invested if opportunity presents itself."

53.     In December 2021, D.E. began hearing that Griffin and G8 Equity were not paying investors.  D.E. text messaged Griffin about this, who responded "you'll be okay."

54.     D.E. has not received the return of principal or any investment returns on the December 15, 2021 G8 RE promissory notes.

### 3. Investor A.H.

55.     Griffin repeated this same solicitation and investment method with a small business owner who has the initials A.H. and resides in Jacksonville, Florida ("A.H.").

56.     In August 2021, Griffin met with A.H. at the G8 Entities' office in Jacksonville, Florida.

57.     A.H. lacked expertise investing and was interested in a passive investment that would generate investment returns.

11

58.    During the August 2021 meeting, Griffin told A.H. that:

a.    Based on Griffin's experience buying and selling real estate, Griffin was able to make a profit reselling homes quickly, and that was how Griffin could pay investors high monthly returns; and

b.    The G8 investment was passive and short-term, where A.H. would receive approximately 10% interest in about 30 days, with the option to reinvest her principal and earned interest after the 30 days.

59.    On about August 28, 2021, A.H., through her business, which has the initials P.D.C., invested $100,000 in a G8 RE promissory note that provided for $10,000 in interest to be paid to A.H. in 40 days together with the return of her principal investment.

60.    The August 28, 2021 note provided that A.H. could renew the investment at the conclusion of the 40 day period.

61.    After the August 28, 2021 note matured on October 7, 2021, A.H. renewed the investment in the G8 RE note.

62.    On about October 8, 2021, A.H. renewed the investment and rolled the principal investment and interest earned, totaling $110,000, into a renewal promissory note for a 34-day term, with $11,000 in interest to be paid on or before November 11, 2021.

63.    On or around October 8, 2021, A.H., through her business P.D.C., made a second investment in a G8 RE promissory note in the amount of $50,000.

64.    This second G8 RE promissory note was for a 34-day term, with $5,000 in interest to be paid on or before November 11, 2021, and on about November 1, 2021, Griffin paid A.H. $5,000 as interest due on the second promissory note.

65.    On or around November 12, 2021, A.H. renewed for a second time the principal investment and interest earned on the first G8 RE promissory note, totaling $121,000, in a G8 RE renewal promissory note that was for a 33-day term, with $12,100 in interest to be paid by G8 RE to A.H. on or before December 15, 2021.

66.    In about November 2021, Griffin offered to pay A.H. a 20% return in less than 30 days if A.H. made an additional investment.

67.    On about December 7, 2021, A.H., through her business P.D.C., invested in a third promissory note with G8 RE, investing $75,000 in a G8 RE note that provided for a 21-day term with $15,000 in interest to be paid on or before December 28, 2021.  On or around December 28, 2021, Griffin paid A.H. by wire transfer $15,000 as interest due on the third promissory note.

68.    In December 2021, A.H. communicated with Griffin by text message regarding the status of late payments. After responding to a few of A.H.'s text messages, Griffin stopped responding.

69.     Griffin has not paid A.H. the total of $225,000 in principal and approximately $33,100 in interest owed on the August 2021 G8 RE promissory note and renewal promissory notes related to the August 2021 note.

B.  Griffin's Material Misrepresentations and Omissions to Investors

70.     From no later than January 2020 until at least December 2021, Griffin made oral and written material misrepresentations and omissions to investors in connection with the G8 Entities' securities offerings, concerning the use of investor funds and the source of investor returns.

*1.  The Use of Investor Funds*

71.     The G8 Entities promissory notes stated that investor funds "will be used by G8 in regards to real estate investment deals."

72.     The promissory notes stated no other use of investor funds.

73.     When meeting with potential investors at the G8 Entities' office, Griffin told investors he would use their funds to invest exclusively in real estate.

74.     For example, during the October 2021 meeting with investor V.B. in the G8 Entities' office in Jacksonville, Florida, Griffin:

        a.     Told V.B. that he would use her investment funds to purchase homes at wholesale prices and would sell the homes within 45 days for more than what he paid for them, thereby generating investment returns; and

b.     Assured V.B. that Griffin would use V.B.'s funds exclusively to invest in real estate.

75.    At no time did Griffin tell V.B. that Griffin or the G8 Entities would use investor funds for any purpose other than investing in real estate.

76.    Griffin made these same representations to investor D.E. during the November 2020 meeting at the G8 Entities' office in Jacksonville, Florida.

77.    Specifically, during that meeting Griffin told D.E. that Griffin would use D.E.'s investor funds to purchase homes for cash and to sell them for more than what he paid for them a short time later, in a practice commonly referred to as "flipping properties."

78.    At no time did Griffin tell D.E. that Griffin or the G8 Entities would use investor funds for any purpose other than investing in real estate.

79.    Griffin's representations to investors about the use of investor funds were false.

80.    Griffin never used the investor funds raised in the G8 Entities' promissory note offerings to invest in real estate.

81.    Griffin was the sole signatory on the G8 Entities' bank accounts that received investor funds and he comingled investor money in those accounts as well as in bank accounts held in the names of other businesses Griffin owned and controlled.

82.     From no later than July 23, 2021 until at least December 17, 2021, Griffin used at least $3,950,000 of investor money to repay other investors their purported investment returns.

83.     For example, Griffin used an investor's July 23, 2021 deposit of $135,000 to repay eleven other investors a total of $132,730 between July 27 and July 30, 2021.

84.     By way of a second example, in November 2021, Griffin used another investor's November 23, 2021 deposit of $480,000 to repay 33 other investors a total of $335,569 on November 23, 24, 26, and 29, 2021.

85.     In addition, Griffin used investor funds for his personal use.

86.     From March 2021 until December 2021, Griffin caused $141,699 in investor funds to be transferred into Griffin's personal bank accounts.

87.     From November 2020 until December 2021, Griffin made cash withdrawals from the G8 Entities' bank accounts totaling approximately $519,000 and from January 2020 until December 2021, Griffin spent at least $161,609 on personal expenditures from commingled funds that included investor money, including but not limited to payments to luxury retailers, jewelry stores, and church donations.

88.     At the time Griffin made the representations to investors about the use of investor funds during the offering, Griffin knew or should have known that the

representations were false because he had never used the G8 Entities' investor funds to invest in real estate and was instead using those funds for his personal use and to pay prior investors their purported investment returns.

## 2. The Source of Investor Returns

89.    Griffin promised investors high monthly returns, both verbally during meetings and in the promissory notes.

90.    For example, many of the G8 Notes stated that the investor would receive at least a 10% return at the end of the one-month note period.

91.    On September 8, 2020, Griffin promised B.W. a 33% return in as little as 24 days.

92.    On September 26, 2020, Griffin promised T.W. a 33% return in as little as 24 days.

93.    On October 28, 2021, Griffin promised G.B. a 20% return in as little as 19 days.

94.    On November 15, 2021, Griffin promised M.C. a 15% return in as little as 4 days.

95.    On top of the high returns during the initial maturity period stated on the face of the promissory notes, the notes stated that the investments could be renewed with the investment principal and earned interest rolled over.

96.     As such, investors could purportedly earn more than 200% compounded returns in a year.

97.     During the meetings with investors at the G8 Entities' office in Jacksonville, Florida from January 2020 until December 2021, Griffin told investors their returns would be generated from his efforts in buying and flipping properties.

98.     However, during this same time period, Griffin was not using investor funds to purchase properties to resell for profit.

99.     Instead, from January 2020 until December 2021, Griffin was spending investor money on his living expenses and using investor funds to pay earlier investors their purported investment returns in Ponzi-like fashion.

100.    As a result, and because Griffin was not generating income from the purchase and sale of property, Griffin had no reasonable basis to believe he could pay investors the promised investment returns at the time Griffin represented these promised returns to investors.

V.   CLAIMS FOR RELIEF

COUNT I

Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

101.    The SEC repeats and realleges paragraphs 1 through 100 of this Amended Complaint.

102.    Griffin, beginning no later than January 2020 and ending no earlier than December 2021, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, employed devices, schemes or artifices to defraud.

103.    By reason of the foregoing, Griffin, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

<u>COUNT II</u>

<u>Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act</u>

104.    The SEC repeats and realleges paragraphs 1 through 100 of this Amended Complaint.

105.    Griffin, beginning no later than January 2020 and ending no earlier than December 2021, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts in order to make the statements made, in the light of the circumstances in which they were made, not misleading.

106.    By reason of the foregoing, Griffin, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT III

### Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

107.    The SEC repeats and realleges paragraphs 1 through 100 of this Amended Complaint.

108.    Griffin, beginning no later than January 2020 and ending no earlier than December 2021, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating, and will operate as a fraud upon the purchasers of such securities.

109.    By reason of the foregoing, Griffin, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## COUNT IV

### Fraud in Violation of Section 17(a)(1) of the Securities Act

110.    The SEC repeats and realleges paragraphs 1 through 100 of this Amended Complaint.

111.    Griffin, beginning no later than January 2020 and ending no earlier than December 2021, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the offer or sale of securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

112.    By reason of the foregoing, Griffin, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT V

### Fraud in Violation of Section 17(a)(2) of the Securities Act

113.    The SEC repeats and realleges paragraphs 1 through 100 of this Amended Complaint.

114.    Griffin, beginning no later than January 2020 and ending no earlier than December 2021, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or of the mails, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading.

115.     By reason of the foregoing, Griffin, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

<u>COUNT VI</u>

<u>Fraud in Violation of Section 17(a)(3) of the Securities Act</u>

116.     The SEC repeats and realleges paragraphs 1 through 100 of this Amended Complaint.

117.     Griffin, beginning no later than January 2020 and ending no earlier than December 2021, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the offer or sale of securities, negligently engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers of such securities.

118.     By reason of the foregoing, Griffin, directly or indirectly violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## VI.  RELIEF REQUESTED

WHEREFORE, the SEC respectfully requests that the Court find that Defendant committed the violations alleged and:

### A.  Permanent Injunctions

Issue a Permanent Injunction, restraining and enjoining Griffin, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him, from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.

### B.  Disgorgement

Issue an Order directing Griffin to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Amended Complaint.

### C.  Penalty

Issue an Order directing Griffin to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### D.  Officer and Director Bar

Issue an Order pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d) of the Exchange Act, 15 U.S.C. § 77u(d), permanently prohibiting Griffin from serving as an officer or director of any issuer that has a class

of securities registered pursuant to Section 12 of the Exchange Act, or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act.

### E.  Further Relief

Grant such other and further relief as may be necessary and appropriate.

### F.  Retention of Jurisdiction

Further, the SEC respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the SEC for additional relief within the jurisdiction of this Court.

### VII.  DEMAND FOR JURY TRIAL

The Commission hereby demands a jury trial in this case on all issues so triable.


June 18, 2025                    Respectfully submitted,

By:    *Russell R. O'Brien*
         Russell R. O'Brien
         Trial Counsel
         Florida Bar No. 084542
         Direct Dial: (305) 982-6341
         Direct email: obrienru@sec.gov

         Attorney for Plaintiff
         SECURITIES AND EXCHANGE COMMISSION
         801 Brickell Avenue, Suite 1950
         Miami, Florida  33131
         Telephone: (305) 982-6300
         Facsimile:   (305) 536-4154